UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANNY COLON,

                                        Plaintiff,

        v.                                                    9:03-CV-1535
                                                              (LEK/DRH)

SUPERINTENDENT GREENE, Great Meadow
Correctional Facility; *et al.,*

                                        Defendants.
_____

APPEARANCES:                              OF COUNSEL:

DANNY COLON
Plaintiff, *pro se*
96-A-2756

HON. ANDREW M. CUOMO                      MICHAEL G. MCCARTIN, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

LAWRENCE E. KAHN
U.S. District Judge


## <u>MEMORANDUM- DECISION AND ORDER</u>


        Plaintiff Danny Colon brings this *pro se* civil action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants violated his constitutional rights while he was housed at Great Meadow

Correctional Facility ("GMCF").  Amended Compl. (Dkt. No. 5).[1]  Specifically, Colon alleges

_____

        [1] Both Plaintiff's original Complaint (Dkt. No. 1) and his amended Complaint (Dkt. No. 5)
are unverified pleadings, as there is no indication that either were executed under penalty of perjury
that the allegations in the pleadings were true and correct.  <u>Cf.</u> <u>Mitchell v. Dept. Correction</u>, 2008
WL 744041, *7 (S.D.N.Y. 2008).

that the Defendants intentionally released him from his keeplock[2] status so he could be assaulted by another inmate that one Defendant had bribed, illegally searched his cell when Plaintiff was not present, planted a weapon in Plaintiff's cell and then wrote a false misbehavior report concerning the weapon, used excessive force against Plaintiff in violation of his Eighth Amendment rights,[3] were deliberately indifferent to Plaintiff's medical needs, denied Plaintiff due process in a disciplinary proceeding in violation of his Fourteenth Amendment rights, and impeded Plaintiff's access to the grievance process by failing to process or respond to his grievances.  Id.

Presently before the Court is Defendants' Motion for Partial Summary Judgment pursuant to FED. R. CIV. P. 56(b).  Dkt. No. 81.  Colon opposes the Motion.  Dkt. No. 92.

I.      **BACKGROUND**

A.      **Material Facts**

1.      **Events of October 15, 2003**

On October 15, 2003 Plaintiff was incarcerated at Great Meadow Correctional Facility

---

[2] Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and denying or limiting the prisoner's participation in normal prison activities. Gittens v. LeFevre, 891 F.2d 38, 39 (2d Cir.1989); Tinsley v. Greene, No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, inter alia, Green v. Bauvi, 46 F.3d 189, 192 (2d Cir.1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  Lee v. Coughlin, 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (citing Camacho v. Keane, No. 95 CIV. 0182, 1996 WL 204483, at *2 (S.D.N.Y. Apr. 25, 1996) and Gayle v. Keane, No. 94 CIV. 7583, 1998 WL 187862, at *4 (S.D.N.Y. Apr. 21, 1998)).  Those conditions include confinement to the inmate's general population cell for twenty-three hours a day, with one hour for exercise.  Id.  Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals.  Id.  The main difference between keeplock and the general population is that keeplocked inmates do not leave their cell for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.  Id.

[3] Defendants have conceded that the claim of excessive force can not be adjudicated on this Motion for Summary Judgment and, therefore, have not offered any evidence on that claim.

and was on keeplock status. McCarthy Aff. at ¶4. On this date Officer McCarthy released

Plaintiff from his cell during the dinner hour. Id. McCarthy released Plaintiff from his cell in

error. Id. This release occurred because a prior shift left the console switch that controls the

door to Plaintiff's cell in an incorrect position. Id. at ¶5. McCarthy did not knowingly release

Plaintiff from his cell, and he had no knowledge that Plaintiff would be involved in an altercation

with another inmate, or anyone else, as a result of his release. Id. at ¶7. Plaintiff acknowledged

in his deposition that he had no information or knowledge that McCarthy was aware that an

assault was going to happen. Pl's Depo. at 46 (Dkt. No. 81, Att. 18). On October 15, 2003,

McCarthy wrote a Memorandum to his supervisor explaining what had occurred. McCarthy Aff.,

Ex. A (Dkt. No. 81, Att. 16).

 In his Amended Complaint, Plaintiff alleged that, prior to his release from his cell on

October 15, 2003, Defendant Holden came to his cell and threatened Plaintiff that if he did not

drop his federal court actions against staff at Lakeview and Woodborne Correctional facilities, he

would get hurt or set up with a weapon. Plaintiff also alleges in his amended Complaint that

Defendant Holden paid an inmate in heroin to assault Plaintiff. Plaintiff stated in his deposition

that he had signed Affidavits from other inmates that support his allegations, but he has not

provided any such evidence to the Court. Pl's Depo. at 25-26, 33-34 (Dkt. No. 81, Att. 18).

 It is undisputed that Plaintiff was involved in a physical altercation with another inmate

on October 15, 2003 while standing on line in the rotunda. The corrections officers who were

present immediately broke up the fight. Pl's Depo. at 27 (Dkt. No. 81, Att. 18). Defendant

Holden submitted an Affidavit in support of the pending Motion stating that he never threatened

Plaintiff, and that on October 15, 2003 Holden did not know that Plaintiff had filed any lawsuits.

Holden Aff. at ¶4. In addition, Holden submitted an Affidavit in which states that he did not pay

any inmate, with drugs or anything else, to assault Plaintiff.  Holden Aff. at ¶5.

After the altercation, Plaintiff was treated at the facility hospital.  In his Amended

Complaint, Plaintiff alleged that he was escorted from the facility hospital back to the E-1

company shower by Defendant Millington.  Plaintiff also alleged that Millington verbally

threatened Plaintiff that he had better not say anything or Millington would crack Plaintiff's head

with his baton.  With respect to the alleged threat, Millington has denied making any threat to

Plaintiff.  Millington Aff. at ¶5 (Dkt. No. 81, Att. 19).  Plaintiff has not refuted or controverted

this denial.

Plaintiff further alleged in his Amended Complaint that Defendant Kirkley authorized a

search of Plaintiff's cell and a plan to plant a weapon in Plaintiff's cell.  Plaintiff also argues

thatthe search was illegal because he was not present during the search.  In his response to this

Motion, Plaintiff has offered no support for these allegations.  In his Affidavit, Defendant

Kirkley denied that he was involved in a plan to setup Plaintiff with a weapon.  Kirkley Aff. at ¶5

(Dkt. No. 81, Att. 14).  In addition, Defendants have presented the Affidavit of Defendant

Millington who states that "during an authorized cell search of plaintiff's cell on October 15,

2003 by C.O. Holden and myself, C.O. Holden discovered a razor with a missing blade.  When

C.O. Holden then opened up a matchbook in the plaintiff's locker, he discovered a razor blade

inside."  Millington Aff. at ¶6 (Dkt. No. 81, Att. 19).  Millington further stated that "[n]either I

nor C.O. Holden 'planted' that razor blade in the plaintiff's prison cell."  Id. at ¶7.  In his

Affidavit, Defendant Holden states that he discovered the razor with a missing blade and when

he opened a matchbook in Plaintiff's locker, he discovered the razor blade tucked inside.  Holden

Aff. at ¶6 (Dkt. No. 81, Att. 12).  Holden adds that "[c]onsequently, I authored a truthful

misbehavior report against the plaintiff.  Id. at ¶7 and Exh. A (Dkt. No. 81, Att. 13).

### 2.    Plaintiff's Grievance Claims

It is undisputed that on October 16, 2003 Plaintiff wrote a grievance, directed to the IGRC, complaining of the events of October 15, 2003 including the lack of security that resulted in Plaintiff being assaulted, the cell search, and the weapons charge that was filed against him. Plaintiff alleged in his Amended Complaint that "S. Reams never responded to said grievance and G. Greene never responded to said Complaints."  Am. Compl. at ¶27 (Dkt. No. 5). Defendants have presented the Court with an Affidavit from Defendant Reams.  In her Affidavit, Reams states that Plaintiff's grievance was logged in on October 20, 2003, was treated as a "Code 49" Harassment grievance and was properly processed through all stages of the grievance process.  Reams Aff. at ¶5 (Dkt. No. 81, Att. 33).  Annexed to Reams' Affidavit as Exhibit A is the entire record of the grievance starting with the original grievance, the responses thereto, Plaintiff's appeals, and a final decision from the Central Office Review Committee ("CORC") dated December 3, 2003.  Id. at Exh. A (Dkt. No. 81, Att. 34).  Defendants also provided the Court with an Affidavit from Defendant Greene, the written complaints he received from Plaintiff, and Defendant Greene's response to same.  Greene Aff. (Dkt. No. 81, Att. 8).  Plaintiff has offered this Court no evidence that there were additional complaints to Greene that were unanswered.

### 3.    Plaintiff's First Disciplinary Proceeding.

As a result of the events of October 15, 2003, Plaintiff was served with two separate misbehavior reports.  The first hearing on the misbehavior reports began on October 20, 2003 and concluded on October 28, 2003.  The first hearing addressed the possession of a weapon and destruction of state property charges that arose from the cell search.  The transcript from this hearing was filed with the Court as an exhibit to the Affidavit of Defendant Doling, the Hearing

5

Officer who heard and decided the proceeding. Doling Aff., Exh. A (Dkt. No. 81, Att. 2). The hearing paperwork is annexed to the Doling Affidavit as Exhibit E. The audiotape of the hearing was also provided as Exhibit C to the Doling Affidavit.

In his Amended Complaint, Plaintiff alleged that the Hearing Officer refused to permit Plaintiff to speak or read into the record in his own defense, refused to allow witnesses, and screamed at Plaintiff and kicked him out of the hearing.[4] Am. Compl. at ¶29 (Dkt. No. 5).

A review of the hearing reveals that the hearing officer advised Plaintiff of his rights in the hearing, confirmed that plaintiff had received a written copy of the charges in advance, and read Plaintiff the charges. Doling Aff., Exh. A, at 1 (Dkt. No. 81, Att. 2). The Hearing Officer accepted Plaintiff's pleas of not guilty to each charge, and permitted Plaintiff to raise preliminary objections and receive rulings on them. Id. at 3-7. At the second day of proceedings, one of the witnesses that Plaintiff requested was made available by telephone conference, Plaintiff was permitted to present the questions he wanted asked of the witness, and the Hearing Officer asked the questions of the witness. Id. at 8-11. The second witness was unavailable and Plaintiff was advised that a further adjournment would be required. Id. at 11. Plaintiff responded "I'm not waiting" and demanded that the Hearing Officer call the rest of his witnesses. Id. At that time a verbal exchange between the Plaintiff and the Hearing Officer ensued and the Hearing Room Security Officer directed Plaintiff first to put his hands in his pockets and later to put his hands on the wall. Id. Plaintiff refused the first order, and the Security Officer eventually removed

---

[4] In his Complaint, Plaintiff does not indicate whether the allegations pertain to both proceedings on October 20, 2003. However, the Court will review both proceedings in their entirety and address each separately.

Plaintiff from the Hearing Room.[5]  Id.  On the record, the Hearing Officer stated that he had determined that Plaintiff had become a threat to safety and security and would not be permitted to return for the balance of the hearing.  Id. at page 12.  The Hearing Officer found Plaintiff guilty of both charges and imposed a penalty of 90 days keeplock, loss of packages, commissary and phone privileges.  Id.

### 4.    Plaintiff's Second Disciplinary Proceeding.

The second hearing was started on October 20, 2003 and concluded on October 28, 2003. The second hearing addressed the charges of violent conduct, assault on other, fighting, and refusing a direct order arising from the October 15, 2003 altercation in the rotunda with another inmate.  The transcript from this hearing was filed with the Court as an exhibit to the Affidavit of Defendant Doling, the Hearing Officer who heard and decided the proceeding.  Doling Aff., Exh. B (Dkt. No. 81, Att. 3).  The hearing paperwork is annexed to the Doling Affidavit as Exhibit F. The audiotape of the hearing was also provided as Exhibit D to the Doling Affidavit.

A review of the hearing reveals that the Hearing Officer advised Plaintiff of his rights in the hearing, confirmed that Plaintiff had received a written copy of the charges in advance, and read Plaintiff the charges.  Doling Aff, Exh. B, at 1-2 (Dkt. No. 81, Att. 3).  The Hearing Officer accepted Plaintiff's pleas of not guilty to each charge, and *sua sponte* dismissed the charge of assault because there were insufficient facts set forth to support the charge.  Id. at 2.  Thereafter, the Hearing Officer sought to permit Plaintiff to raise preliminary objections and receive rulings on them.  Id.  However, Plaintiff refused to acknowledge the initial rulings and continued to attempt to offer repetitive information on issues that had already been decided.  Id. at 4-6.  The

_____

[5] On October 19, 2003 Plaintiff was served with a misbehavior report, arising from these hearing events, that alleged charges of threats by gesture, threats spoken, movement regulation violation, and disobeying a direct order.  This disciplinary proceeding will be addressed below.

Hearing Officer indicated that the matter would be adjourned, and would resume at a later time. However, Plaintiff indicated an unwillingness to return to the hearing, finally stating "Just give me my decision and you will not have to call me." Id. at 6-7.

In compliance with Plaintiff's directive, the Hearing Officer concluded the hearing and found Plaintiff guilty of the remaining three charges. Id. at 8. The Hearing Officer imposed a sentence of 90 days keeplock, loss or package, commissary and telephone privileges. Id. Further, given the circumstances of the charges, including that Plaintiff did not appear to be the aggressor, the Hearing Officer suspended 45 days of the 90 day penalty for a period of 180 days from the date of the hearing. Id.

### 5. **Plaintiff's Third Disciplinary Proceeding.**

On October 19, 2003, Plaintiff was served with a misbehavior report that alleged charges of threats by gesture, threats spoken, movement regulation violation, and disobeying a direct order based upon Plaintiff's conduct in his prior disciplinary proceeding on October 28, 2003. A complete copy of the transcript from this proceeding is annexed to the Affidavit of Stephen Rowe, who is not a party to this action. Dkt. No. 81, Att. 36-37. Plaintiff alleges that his assistant, Defendant Smith, denied Plaintiff documents to prepare a defense and wrote a memorandum against Plaintiff. Am. Compl. at ¶35 (Dkt. No. 5). However, in response to Defendants' Rule 7.1 Statement of Material Facts, Plaintiff admitted that he told Hearing Officer Rowe that, although he was not satisfied with the assistance provided by Smith, "I'll say, being that I'm here already, I just want to go through the proceedings cause I don't want to prolong it." See Defendants' Statement of Material Facts and Plaintiff's Response to Defendants' Statement of Material Facts, Dkt. No. 81, Att. 38 and Dkt. No. 92. Plaintiff was found guilty of the charges and a penalty of 120 days keeplock with corresponding loss of phone, commissary and package

privileges was imposed.  Rowe Aff., Exh. B, at 8 (Dkt. No. 81, Att. 37).

### 6.    **Deliberate Indifference Claims.**

After the October 15, 2003 altercation, Plaintiff was treated at the GMCF Hospital for a laceration to the outer corner of his left eye, and two lacerations in his lower right lip.  Nesmith Aff. at ¶4 and Ex. A (Dkt. No. 81, Att. 20, 21).  Plaintiff also complained that one of his teeth was loose.  Id.  Defendant Nesmith put one suture in the smaller of the two lacerations, and four sutures to close the other laceration in Plaintiff's lower lip.  Id.  A registered nurse checked Plaintiff's teeth and noted that they seemed sturdy.  Id.  The medical records reflect that photographs were taken and no other injuries were noted by the staff or reported by Plaintiff.  Id. In his Amended Complaint, Plaintiff complained that Defendant Nesmith did not wear gloves when he sutured Plaintiff's lacerations, and that he never called Plaintiff back to the infirmary to remove his sutures or treat him for his other injuries.  Plaintiff alleges he removed the sutures from his lip himself.  Pl's Depo. at 79-80 (Dkt. No. 81, Att. 18).  Neither party offered the Court any evidence with respect to the issue of the wearing of gloves.  However, with respect to the sutures, Nesmith's Affidavit states that "[t]he kind of sutures I used are absorbable and fall out by themselves."  Nesmith Aff. at ¶6 (Dkt. No. 81, Att. 20).

 Plaintiff further alleged that Defendant Nesmith refused Plaintiff any medical care for injuries to his left eye, lower teeth, lower back, right hand, right leg, and the right side of his head that were sustained in a use of force incident with Defendant Bezio on October 28, 2003.  Am. Compl. (Dkt. No. 5).  Plaintiff also alleges that his sutured lip did not heal properly, making him unable to eat for weeks.  Id. at ¶¶49-51.

Plaintiff's medical records reveal that he was seen on October 28, 2003 after the use of force incident.  Id.  Plaintiff complained of right wrist pain, and an x-ray of the wrist was

ordered.  Plaintiff admitted this fact.  Pl's Statement of Material Facts, ¶61 (Dkt. No. 92).

Plaintiff did not complain of back pain on October 28, 2003.  Nesmith Aff., Ex. A. (Dkt. No. 81,

Att. 21).  The October 28, 2003 x-ray report showed no fracture or dislocations of Plaintiff's

wrist.  Nesmith Affid., Ex. E (Dkt. No. 81, Att. 25).  On October 30, 2003, Plaintiff was seen in

the medical facility with complaints of back spasms and right leg pain.  Id., Ex. A and I (Dkt. No.

81, Att. 21, 29).  Plaintiff was provided with pain medication.  Id., Ex. A (Dkt. No. 81, Att. 21).

Plaintiff was seen by facility medical staff on October 31, 2003 and was again given pain

medication.  Id., Ex. I (Dkt. No. 81, Att. 29).  Plaintiff also requested a dental appointment and

the records indicate that he was to be scheduled for an appointment.  Id.  Plaintiff was seen again

by medical personnel on November 4, 2003.  Id. at Ex. J (Dkt. No. 81, Att. 30).  At that time,

Plaintiff was complaining of right leg pain from an old gunshot wound.  Id.  The records reflect

that it was determined that, if the pain continued, an x-ray of the right lower leg should be

considered.  Id.  Plaintiff was transferred to Upstate Correctional Facility on November 21, 2003.

At the time of his transfer, Plaintiff reported an old injury to his right lower leg and right wrist,[6]

requested a dental referral, and asked to have new glasses made.  Id. at Exhibit K (Dkt. No. 81,

Att. 31).

## II.    DISCUSSION.

### A.    Summary Judgment Standard.

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.

Under that provision, summary judgment is warranted when "the pleadings, the discovery and

---

[6] The medical records submitted by Plaintiff confirm both ongoing right leg issues related to an old gun shot wound, and ongoing right wrist pain that has been sporadically treated.  See Dkt. No. 93, Exhibit E.  According to the medical records Plaintiff supplied, both of the leg and wrist conditions have been ongoing since at least 2001.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004).  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, supra at 323).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (citing Anderson).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific

and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  Scott v. Coughlin, 344 F.3d at 289 (citing Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) and Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

In response to Defendants' Motion for Summary Judgment, Plaintiff answered Defendants' Statement of Material Facts, but did not submit a separate Rule 7.1 Statement.  Further, in response to approximately 37 of the statements, Plaintiff simply responded "Deny" with no evidence to controvert the statement.  On approximately three occasions, Plaintiff relied on his Amended Complaint which, as noted above, is unverified and is thus of no evidentiary value in response to this Motion.  Plaintiff admitted 22 of the statements that Defendants set forth.  Thus, the majority of Defendants' 77 statements in their Statement of Material Facts

remain uncontroverted by Plaintiff.

    **B.**    **PLAINTIFF'S CLAIMS**.

    **1.**    <u>**Failure to Protect**</u>.

Plaintiff alleges that the Defendants' actions of releasing him from his cell when he was supposed to be keeplocked amount to deliberate indifference to Plaintiff's safety. In order to maintain such an action, Plaintiff must demonstrate not only that a serious injury was sustained, but also that it was the result of "deliberate indifference" on the part of prison officials. The Plaintiff must therefore prove both an objective injury and intentional or reckless conduct on the part of a state official. <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994).

A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. In other words, the official must have had reason to know and have known of an unusual risk of physical harm to the plaintiff and then have deliberately failed to act "in conscious disregard or indifference to that risk." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 985 (2d Cir. 1991). Deliberate indifference to a known risk is a necessary element; mere negligent failure to protect cannot provide the basis for §1983 liability. (citations omitted). <u>Johnson v. Abate</u>, 2000 WL 1919913 (E.D.N.Y. Dec. 22, 2000) (citing <u>Farmer</u>, 511 U.S. at 835).

While Plaintiff has offered evidence that he sustained an injury in the altercation, Defendants have submitted evidence that Plaintiff's release from his cell was inadvertent and negligent. Plaintiff has not refuted that evidence or presented any evidence that a material fact is in dispute regarding Plaintiff's inadvertent release. Further, there is no evidence or indication that the Officer who released Plaintiff had any knowledge that another inmate would attack

Plaintiff. Finally, it is undisputed that once the attack occurred, the correctional staff in the area moved immediately to break up the fight and end the attack on Plaintiff. Accordingly, the Court finds that Defendants' Motion for Summary Judgment is properly granted on Plaintiff's claim of failure to protect.

2.      **Threats and Retaliation**.

Plaintiff makes a variety of allegations of threats and retaliatory actions. A number of the allegations are too conclusory to form a colorable claim. However, a number of Plaintiff's allegations provide sufficient information to permit the Court to identify his claims.

First, Plaintiff alleges that Defendant Holden threatened Plaintiff that if he did not drop his other federal court actions, harm would befall him. Am. Compl. at ¶ 19 (Dkt. No. 5). Plaintiff further alleges that Defendant Millington told Plaintiff that he had better not say anything or he will crack Plaintiff's head. Id. at ¶ 24. Plaintiff offers no explanation why Millington would say such a thing, nor does Plaintiff state why this threat was allegedly made. Finally, Plaintiff alleges that Superintendent Greene transferred Plaintiff to Upstate Correctional Facility and, in doing so, abused his authority. Id. at ¶54.

In response to this Motion, both Defendant Holden and Defendant Millington submitted Affidavits denying Plaintiff's allegations, and Plaintiff has offered the Court nothing to support his bald assertions. Holden further stated in his Affidavit that on October 15, 2003, he had no knowledge that Plaintiff had filed any lawsuits. In his deposition, Plaintiff testified that prior to the evening of October 15, 2003, he had not told anyone at GMCF that he was suing personnel from DOCS. Pl's Depo. at 17 (Dkt. No. 81, Att. 18).

Plaintiff thus purports to allege a variety of claims based upon alleged verbal threats. However, it is well settled that words alone, however violent, are not held to amount to an

assault.  Hurdle v. Ackerhalt, No. 92-CV-1673, 1993 WL 71370, *1 (N.D.N.Y. Mar. 8, 1993)

(citing Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir.1973).  42 U.S.C. § 1983 is not

designed to rectify harassment or verbal abuse.  Alnutt v. Cleary, 913 F.Supp. 160, 165-66

(W.D.N.Y. 1996) (citations omitted).  Mere allegations of threats and harassment do not rise to

the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.  Hurdle,

1993 WL 71370, *1 (citing Morgan v. Ward, 699 F.Supp 1025, 1055 (N.D.N.Y. 1988); Nelson

v. Herdzik, 559 F.Supp. 27  (W.D.N.Y. 1983); Williams v. Pecchio, 543 F.Supp. 878 (W.D.N.Y.

1982)).

Further, the Court notes that retaliation is a viable claim only when Plaintiff alleges that

adverse actions are taken in retaliation for the exercise of a constitutional right.  See Franco v.

Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988).  The Second Circuit has recently revisited the issue

of retaliation claims.  See Dawes v. Walker, 239 F.3d 489, 491-93(2d Cir. 2001).  In Dawes, the

Court stated that courts must approach claims of retaliation "with skepticism and particular care."

Id. at 481 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  The Court in Dawes

stated that in order to survive dismissal, the plaintiff must advance "non-conclusory" allegations

establishing:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse
> action against the plaintiff, and (3) that there was a causal connection between the
> protected speech [or conduct] and the adverse action.

Dawes, 239 F.3d at 492 (citations omitted).   In considering this evidence, the Court is mindful

that because "retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened

burden of proof, and summary judgment can be granted if the claim appears insubstantial."

Justice v. Coughlin, 941 F. Supp. 1312, 1317 (N.D.N.Y. 1996) (Pooler, J.); Gill v. PACT Org.,

1997 WL 539948, *12 (S.D.N.Y. Aug. 28, 1997) (citations omitted).  If the plaintiff satisfies his

burden, the defendants must then prove that they would have taken the action even in the absence of plaintiff's protected conduct – that is, "even if they had not been improperly motivated." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

However, in this case, the facts are such that Plaintiff has not carried his burden. While Plaintiff makes a specific allegation of a verbal threat, he does not allege that Holden actually took any specific action against him. Further, Plaintiff also admitted, under oath, in his deposition that he had not told anyone at GMCF that he had litigation against DOCS employees pending. This admission only serves to buttress the Affidavit of Holden wherein he states that he had no knowledge of Plaintiff's litigation activity on October 15, 2003.

With respect to the alleged transfer, Defendant Greene's Affidavit states that the decision to transfer inmates is made in Albany by the DOCS Classification and Movement Division, not at the facility level. Greene Aff. at ¶ 8 (Dkt. No. 81, Att. 8). Plaintiff has offered nothing to controvert Greene's statement. It is well settled that the Department of Correctional Services has the authority and discretion to determine where inmates should be housed, and when transfers are appropriate. Tinsley v. Goord, 2006 WL 2707324 (S.D.N.Y. Sept. 18, 2006). In fact "[a] state prisoner has no liberty interest in being housed in a particular facility." Cole v. Goord, 2006 WL 3378145 (S.D.N.Y. Nov. 16, 2006) (citing Matiyn v. Henderson, 841 F.2d 31, 34 (2d Cir. 1998)). "In the absence of a violation of a federally protected right . . . there is no basis for a federal court to interfere in DOCS' housing decisions." Matiyn, 841 F.2d at 34. Plaintiff has made no such allegation or claim in this action. Accordingly, the Court finds that the Defendants' Motion for Summary Judgment should be granted on Plaintiff's claims based upon threats and retaliation.

    **3.**    **Disciplinary Due Process**.

Plaintiff alleges that he was denied due process in his three disciplinary proceedings held

on October 20 and 28, 2003 and on November 9 -10, 2003.  More specifically, Plaintiff alleges that the Hearing Officer was not impartial, Plaintiff was improperly ejected from the hearing room, Plaintiff was prohibited from calling witnesses and offering evidence, and that on one occasion, Plaintiff's assistant was ineffective.

The Fourteenth Amendment to the Constitution states that "no State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[ ] the sentence in . . . an unexpected manner[.]"  Sandin v. Conner, 515 U.S. 472, 484 (1995).  "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 37 F.Supp.2d 162, 167 (N.D.N.Y.), *vacated and remanded on other grounds*, 238 F.3d 223 (2d Cir. 2001) (citing Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996)).  In Sandin, the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prisoner life."  515 U.S. at 484; see also Giano v. Selsky, 238 F.3d at 225 (citing Sandin v. Conner, 515 U.S. at 484); Welch v. Bartlett, 196 F.3d 389, 392 (2d Cir. 1999).

Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship."  See Sandin v. Conner, 515 U.S. at 484.  Factors relevant to an analysis of what constitutes an atypical and significant hardship include: "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to

which the conditions of segregation differ from other routine prison conditions, and (3) the

duration of the disciplinary segregation compared to discretionary confinement." Spaight v.

Cinchon, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing Wright v. Coughlin, 132 F.3d

133, 136 (2d Cir. 1998)); see also Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (stating

that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of

confinement] and their duration must be considered, since especially harsh conditions endured

for a brief interval and somewhat harsh conditions endured for a prolonged interval might both

be atypical" (citation omitted)).  Although the length of the confinement is one guiding factor in

a Sandin analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the

length or type of sanction" that meets the Sandin standard.  Jenkins v. Haubert, 179 F.3d 19, 28

(2d Cir. 1999).  However, "[w]here the plaintiff was confined for an intermediate duration-

between 101 and 305 days-'development of a detailed record' of the conditions of the

confinement relative to ordinary prison conditions is required."  Palmer v. Richards, 364 F.3d at

64-65 (quoting Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000)); see also Hanrahan v.

Doling, 331 F.3d 93, 97-98 (2d Cir.2003) ("[W]here the actual period of disciplinary

confinement is insignificant or the restrictions imposed relatively minor, such confinement may

not implicate a constitutionally protected liberty interest."); Sims v. Artuz, 230 F.3d 14, 23 (2d

Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore

necessitate "specific articulation of ... factual findings before the district court could properly

term the confinement atypical or insignificant").  Accordingly, the court must "make a fact-

intensive inquiry" that would examine the actual conditions of confinement within SHU.  Palmer

v. Richards, 364 F.3d at 65 (citations omitted); see also Wright v. Coughlin, 132 F.3d 133, 137

(2d Cir. 1998); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997).[7]  If the conditions of

confinement are undisputed, a court may decide the Sandin issue as a matter of law.  Palmer v.

Richards, 364 F.3d at 65.  If, however, normal conditions of SHU exist, but the period of

confinement is longer than the intermediate duration, then it would constitute a significant

departure from ordinary prison life requiring the protection of procedural due process under

Sandin.  Id.  When, as here, there are multiple penalties imposed in succession over a relatively

brief period of time, the Court of Appeals has instructed that the Court should aggregate periods

of confinement for purposes of the Sandin inquiry.  Cf. Sealey v. Giltner, 197 F.3d 578, 587 (2d

Cir. 1999).  In the case at bar, Defendants imposed three periods of confinement, totaling 255

days of keeplock, within a period of approximately thirteen days (the period between October 28,

2003 and November 10, 2003).

 However, it is noted that Plaintiff has not alleged in his Amended Complaint that his

confinement presented any atypical and significant hardship, and Plaintiff admitted this fact in

response to Plaintiff's Response to Defendants' Statement of Material Facts.  Dkt. No. 92 at ¶29.

Plaintiff did not plead even a conclusory allegation in his Complaint, or in this Motion, that his

keeplock status and loss of privileges were in some way atypical of conditions of confinement.[8]

Therefore, the Court assumes that the conditions of confinement were no more restrictive than

necessary pursuant to Department of Correctional Services policies.

 Nevertheless, in light of Plaintiff's *pro se* status and the aggregate period of confinement,

---

 [7] Department of Correctional Services policies provide the conditions of confinement prisoners are subject to when confined in SHU.  See 7 N.Y.C.R.R. §§ 304.1.14 & 305.1.6.

 [8] The Court notes that in his Memorandum of Law Plaintiff argues that "in demonstrating Plaintiff suffered an atypical and significant hardship Plaintiff allege do to such due process violation he suffered mental duress and pain emotional distraught."  Mem. of Law at 19 (Dkt. No. 92, Att. 1).

the Court has reviewed the entire record of each of the three disciplinary proceedings to

determine whether the basic elements of due process are present in each of the three proceedings.

The procedural protections to which a prison inmate is entitled before being deprived of a

constitutionally cognizable liberty interest are well established, the contours of the applicable

requirements having been articulated in Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974).

Under Wolff, an inmate facing the deprivation of a liberty interest as a result of disciplinary

proceedings, while not deserving of "the full panoply of rights" due to a criminal defendant, must

be afforded 1) advance written notice of the charges; 2) the opportunity to appear at a disciplinary

hearing and a reasonable opportunity to present witnesses and evidence, subject to legitimate

safety and penological concerns; 3) a fair and impartial hearing officer; 4) a written statement by

the hearing officer explaining his or her decision and the reasons for the action being taken; and

5) in some circumstances, the right to assistance in preparing a defense.  Wolff, 418 U.S. at 564-

67, 94 S.Ct. at 2978-80; see also Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff);

Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988).  In the event that these requirements are

satisfied, and the resulting disposition is supported by "some evidence"--a standard which has

been described as "extremely tolerant"--an inmate has been afforded due process.  Sira, 380 F.3d

at 69 (citing Superintendent v. Hill, 472 U.S. 445 (1985)).

    a.    **Advance Written Notice of Charges**

It is undisputed that in all three proceedings, Plaintiff received advance written notice of

the charges against him.  See Doling Aff. Ex. A., at 1 (Dkt. No. 81, Att. 2); Ex. B. at 2 (Dkt. No.

81, Att. 3); and Rowe Aff., Ex. A. at 2-3 (Dkt. No. 81, Att. 36).  Plaintiff was also advised of his

rights regarding the conduct of the hearing, and was read the charges against him at the beginning

of each hearing.  Id.

### b.    Opportunity to Appear

It is also uncontroverted that Plaintiff was permitted to attend each of his three hearings. However, on October 28, 2003, during the first of two continued proceedings conducted by Hearing Officer Doling, Plaintiff became argumentative and threatening towards the Hearing Officer and was removed from the Hearing.  Doling Aff., Ex. A., at 10-13 (Dkt. No. 81, Att. 2). The Hearing Officer stated, on the record in the proceeding, "Mr. Colon, as he did at the end of the first session of this proceeding, became argumentative, threatening, and threatening in nature. . . .  It was clear to the hearing office that Mr. Colon was more interested in provoking an incident than in seeking the truth of what occurred . . . .  the hearing office must regretfully determine that Mr. Colon has now become a threat to the safety and security of this hearing room, and therefore will not be allowed to return to the hearing room to complete this and the companion hearing that is presently pending . . . this decision has been made by the hearing officer based upon the need for the safety and security of the hearing officer, his staff, and the hearing room itself."[9]  Id.  Plaintiff was present for the entirety of his third disciplinary proceeding.

Pursuant to 7 N.Y.C.R.R. §254.6(a)(2), Plaintiff had the right to be present at the hearing unless "excluded for reasons of institutional safety or correctional goals."  In Sims v. Artuz, 2004 WL 1491701, *13 (2d Cir. 2004), the Court noted that a Hearing Officer may take action "within his discretion to maintain the safety and order of the proceedings by removing plaintiff," and, that by his own conduct a plaintiff may forfeit his right to call witnesses and present evidence.  Id. Further, in the case before this Court, Plaintiff was initially allowed to attend both proceedings.

---

[9] Plaintiff was ultimately found guilty of threats by gesture, threats spoken, movement regulation violation, and disobeying a direct order as a result of his conduct at the end of this proceeding that resulted in his ejection from the hearing room.

Plaintiff was permitted an opportunity to question the author of the misbehavior report in his first case.  Doling Aff., Ex. A (Dkt. No. 81, Att. 2).  In the second proceeding, Plaintiff refused to accept rulings of the Hearing Officer.  Accordingly, the Hearing Officer sought to adjourn the matter so that Plaintiff would collect himself and be prepared to proceed in light of the rulings.  However, Plaintiff stated to the Hearing Officer at the close of the first day of hearings "Just give me my decision and you will not have to call me."  Id., Ex. B at 7 (Dkt. No. 81, Att. 3).  The Hearing Officer initially indicated his unwillingness to accept Plaintiff's waiver of his right to attend the hearing.  Id.  However, after the threatening events of the first proceeding on October 28, 2003, the Hearing Officer determined that, for safety and security reasons, he would issue a decision without Plaintiff being brought back to the Hearing Room.  Id. at 7-8.

Accordingly, the Court finds that Plaintiff was permitted to attend all three proceedings.  However, Plaintiff's own conduct resulted in his removal from the hearing room of the first two proceedings for safety and security reasons.

### c.    Fair and Impartial Hearing Officer

Plaintiff makes conclusory allegations that Hearing Officer Doling was not fair and impartial.  However, Plaintiff points to nothing in the record before this Court to support his bald assertions.  Plaintiff makes no allegations against the Hearing Officer from the third proceeding and he is not a defendant in this action.

Plaintiff was entitled to an "impartial hearing office who does not prejudge the evidence." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996).  Nevertheless "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."  Id., citing Russell v. Selsky, 35 F.3d 55, 60 (2d Cir. 1994) and Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989).  However, the fact that the Hearing Officer did not

decide in the Plaintiff's favor does not make him biased in the constitutional sense.  Conclusory

allegations are insufficient to state a claim under § 1983.  Barr v. Abrams, 810 F.2d 358, 363 (2d

Cir.1987).

The Court has also reviewed the entire proceedings in all of the hearings conducted by

defendant Doling.  Clearly, the Plaintiff and the Hearing Officer engaged in a number of debates,

and Plaintiff was not in agreement with Doling's rulings on his requests and objections.[10]

Nevertheless, the Court finds no evidence that would support a question of fact as to the Hearing

Officer's fairness, bias, or predetermination in the record.

**d.      Written Statement of the Decision and the Supporting Evidence.**

In this case, it is also undisputed that the Hearing Officer issued written decisions from

each of the two hearings.  Doling Aff., Ex. E and F (Dkt. No. 81, Att. 6, 7).  Each decision states

the findings on each charge, and the evidence relied upon.  Plaintiff has made no allegations that

the written decisions were insufficient or that they were not supported by "some evidence."

**e.      Assistance.**

In all cases Plaintiff executed Assistant Selections Forms.  Id.; Rowe Aff., Ex. A (Dkt.

No. 81, Att. 36).  Plaintiff raised no objections regarding the assistance received in either of the

two hearings before Doling.  In fact, the only claim with respect to the third proceeding, before

Hearing Officer Rowe, is that Defendant Smith refused to allow another person to be Plaintiff's

assistant, denied Plaintiff documents, and wrote a memorandum on behalf of Defendant Bezio.

Am. Compl. (Dkt. No. 5).  When questioned about this assertion at the disciplinary proceeding,

Plaintiff stated "I'll say, being that I'm here all ready, I just want to go through the proceedings

---

[10] Disagreement with the hearing officer does not rise to the level of unconstitutional bias.
Cf. Dumpson v. Rourke, 1997 WL 610652, *6 (N.D.N.Y. 1997).

cause I don't want to prolong it.  I just want to read." Rowe Aff., Ex. A at 3 (Dkt. No. 81, Att. 36); aee also Pl's Response to Dfts' Statement of Material Facts, ¶¶ 46-48 (Dkt. No. 91).

It is well settled that even due process violations "can be waived by the inmate during the course of the disciplinary proceeding." Cox v. Malone, 199 F. Supp.2d 135, 144 (S.D.N.Y. 2002) citing Bedoya v. Coughlin, 91 F.3d 349, 350 (2d Cir. 1990); see also Jackson v. Johnson, 30 F.Supp.2d 613 (S.D.N.Y. 1998).  Plaintiff's acquiescence at his hearing is such a waiver and Plaintiff can not, after the fact, assert a claim based upon a right he clearly waived.[11]

In light of the Court's review of these proceedings, and the issues set forth above, the Court finds that Plaintiff has failed to make any showing of a material fact is dispute with respect to his due process claims.

4.   **Illegal Cell Search**.

Plaintiff alleges that Defendants Millington and Holden searched Plaintiff's cell without Plaintiff present.  Plaintiff alleges that such action violates DOCS directives and Plaintiff's due process rights.  Pl's Depo. at 50-57 (Dkt. No. 81, Att. 18).  Plaintiff alleges that Defendant Kirkley violated his rights by authorizing the search to be conducted when Plaintiff was not present.  Id.

Plaintiff does not direct the Court to the DOCS directive that he alleges was violated by the search of his cell in his absence.  Nevertheless, the Court is aware that such directives exist and have served, unsuccessfully, as the basis for similar claims.  Further, the Court is aware that "a state employee's failure to conform to state law does not in itself violate the Constitution and

---

[11] The Court notes that the transcript reflects that Plaintiff waived a claim to the presence of all witnesses except for Doling and Bezio, both of whom testified.  Further, the Hearing Officer reviewed on the record all the documents requested by Plaintiff and, with the exception of a Use of Force Directive that is not provided to inmates for security reasons, Plaintiff was provided the documents he requested.  Rowe Aff., Ex. A at 18-19 (Dkt. No. 81, Att. 36).

is not alone actionable under §1983." Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985); see also Lopez v. Reynolds, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

The Fourth Amendment protects persons from unreasonable searches and seizures. However, in light of the unique circumstances presented in the prison setting, prison inmates' Fourth Amendment rights are necessarily restricted . See Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). The Supreme Court has held that the search of an inmate's cell outside of the inmate's presence does not violate the Fourth Amendment or the Due Process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 556-57 (1979); Block v. Rutherford, 468 U.S. 576, 590-91 (1984). Moreover, any argument that the unspecified Directive created a liberty interest protected by the Due Process clause must be rejected in light of the Supreme Court's decision in Sandin. See Ramirez v. Holmes, 921 F.Supp. 204, 209 (S.D.N.Y. 1996) (improper cell search does not implicate liberty interest under Sandin). Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted on Plaintiff's claim for illegal cell search.

### 5. **False Misbehavior Report**.

Giving Plaintiff's Amended Complaint the liberal reading that this Court is required to give, it appears that Plaintiff has also alleged that Millington, Holden and Bezio's misbehavior reports were false. However, it is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Bodie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). Rather, if an inmate is afforded a hearing on the charges, "the filing of unfounded charges does not give rise to a *per se* constitutional violation actionable under §1983." Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988) (quoting Freeman v.

Rideout, 808 F.2d 949, 953 (2d Cir. 1986)).

In this case, it is undisputed that Plaintiff was afforded disciplinary hearings on each of the three misbehavior reports written by the Defendants. As discussed above, the proceedings complied with the fundamental requirements of due process. Accordingly, Defendants' Motion for Summary Judgment on this claim should be granted.

**6.   Grievance Processing**.

Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. German v. Fed. Home Loan Mortg. Corp., 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983))) (footnote omitted); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted). To state a claim under section 1983, an inmate must first establish that the conduct complained of violated a protected constitutional right.

Prisoners do not enjoy a constitutional right to invoke inmate grievance procedures. Because "prison grievance procedures do not confer any substantive right upon an inmate," the failure by prison officials to properly implement those procedures does not implicate a "protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Mahotep v. DeLuca, 3 F.Supp.2d 385, 389 n. 3 (W.D.N.Y. 1998) (quoting Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Further, "[w]hile a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same can not be said for a prison grievance system." Johnson v. Barney, 2007 WL 900977, *1 (S.D.N.Y. 2007). Accordingly,

"inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable §1983 claim." Harris v. Westchester County Dept. of Corrections, 2008 WL 953616, *5 (S.D.N.Y. 2008) (citing Shell v. Brzezniak, 365 F. Supp.2d 362, 369-70 (W.D.N.Y. 2005)); Cancel v. Goord, 2001 WL 303713, *3 (S.D.N.Y. 2001).

Because Plaintiff does not enjoy a constitutionally protected right to invoke the grievance process, his claim regarding the manner in which the investigation of his grievance was conducted fails to state a claim upon which relief can be granted under section 1983. Moreover, the records before the Court establish that Plaintiff's grievance was, in fact, processed through all levels of the formal grievance process. In addition, the letters of complaint written to the Superintendent were investigated and responded to.[12] Accordingly, the Court finds that summary judgment should be granted on Plaintiff's claims against Defendants Greene and Reams based upon their alleged failure to properly process Plaintiff's complaints and grievances.

### 7.    Deliberate Indifference to Medical Needs.

To establish an unconstitutional denial of medical care, a plaintiff must establish that the defendant acted with deliberate indifference to serious medical needs. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The alleged deprivation must be sufficiently serious in objective terms and the defendants must know of and

---

[12] It is also well settled that a prison official does not become personally involved in an alleged constitutional violation by merely receiving or forwarding a letter from a prisoner for investigation. Davidson v. Talbot, 2005 WL 928620, *7 (N.D.N.Y. 2005); see also Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (prison supervisors can not be deemed personally involved based simply on a response to a complaint); Thomas v. Coombe, 1998 WL 391143, *6 (S.D.N.Y. 1998) (the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement); Woods v. Goord, 1998 WL 740782, *6 (S.D.N.Y. 1998) (receiving letters or complaints does not render the official personally liable under §1983).

disregard an excessive risk to inmate health and safety.  Id.

In order to satisfy this objective prong of the test, the Plaintiff must demonstrate that his condition is one "of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d at 66.  A plaintiff need not establish that he is facing "imminent death" but must establish more than a "condition which many people suffer from and function with on a daily basis."  Davidson v, Scully, 914 F.Supp. 1011, 1015 (S.D.N.Y. 1996).

For prison officials, deliberate indifference requires more than negligence but less than conduct taken for the specific purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 835. The standard for deliberate indifference requires that the official know of and disregard an excessive risk to inmate health or safety.  Id. at 837.  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  Ross v. Kelly, 784 F.Supp. 35, 44 (W.D.N.Y. 1992).  An inmate does not enjoy the right to treatment of his choice, and mere disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment.  Id. at 45 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)); Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988).  Additionally, negligence by physicians, even if amounting to malpractice, does not become a constitutional violation because the plaintiff is an inmate.  Estelle, 429 U.S. at 107. Thus, claims of malpractice or disagreement with medical treatment are not actionable under section 1983.

Plaintiff's claim of deliberate indifference is based upon allegations that Defendant Nesmisth did not wear gloves when he sutured Plaintiff's lip, did not remove the stitches from Plaintiff's lip, and did not treat him for leg and right hand pain after the incident with Defendant Bezio, including not providing pain medication or ordering an x-ray, and not providing any

follow up medical care.  Pl's Depo. at 79-81 (Dkt. No. 81, Att. 18); Am. Compl. (Dkt. No. 5).

Defendants claim that Plaintiff's injuries did not constitute a "serious medical need" for purposes

of stating an Eighth Amendment claim.  Moreover, Defendants assert that Plaintiff was provided

with medical care for the conditions Plaintiff now complaints of, including the provision of pain

medications and the ordering of x-rays.  Plaintiff's medical records substantiate that Plaintiff was

seen and treated for the conditions he complains of.  Nesmith Aff. and Exs. A-I (Dkt. No. 81,

Atts. 20-29).

    Based upon the foregoing, the Court finds that Plaintiff has failed to establish that his

injuries were anything more than a "condition which many people suffer from and function with

on a daily basis."  Davidson, 914 F.Supp. at 1015.  Because Plaintiff has not satisfied the

objective prong of the test, his Amended Complaint fails to state a claim for relief pursuant to the

Eighth Amendment.

    The Court finds, moreover, that Plaintiff has failed to establish that the Defendants knew

of and disregarded "an excessive risk" to Plaintiff's health or safety.  Farmer, 511 U.S. at 837.

As the Supreme Court stated in Estelle, "the question whether an X-ray . . . is indicated is a

classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or

like measures, does not represent cruel and unusual punishment."  Estelle, 429 U.S. at 107.  It

appears from the medical records presented to this Court that Plaintiff received prompt and

ongoing medical evaluation and care for his alleged injuries and pain.

    In sum, Plaintiff has failed to establish that he suffered a serious medical need to which

the Defendants were deliberately indifferent or as to which they denied him proper medical care.

Accordingly, the Court finds that Defendants' Motion for summary judgment should be granted

on this claim.

### III.    Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion for partial summary judgment (Dkt. No. 81) is

**GRANTED** on all claims except for the excessive force claim against Defendant Bezio; and it is

further

**ORDERED**, that this action shall proceed on the excessive force claim against Defendant

Bezio; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties in accordance with

the Local Rules.

**IT IS SO ORDERED.**


DATED:   September 18, 2008
             Albany, New York

Lawrence E. Kahn
U.S. District Judge